**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-1927

KELLIE A. HALL AND GEOFFREY S. HALL, individually on behalf of themselves and on
behalf of all others similarly situated,

       Plaintiff,

v.

OCWEN LOAN SERVICING LLC, OCWEN FINANCIAL CORPORATION, NATIONSTAR
MORTGAGE LLC, & EXPERIAN INFORMATION SOLUTIONS, LLC,

       Defendants.

---

**CLASS ACTION COMPLAINT AND JURY DEMAND**

---

### I.      INTRODUCTION

1.     This case presents a chilling look into how difficult it is for people of modest

means to clear up blatant errors on their consumer credit reports ("consumer reports" or "credit

reports"). There are three central claims: (1) violations of the Fair Credit Reporting Act, 15

U.S.C. § 1681, *et seq*. ("FCRA"), against Ocwen and Experian for falsely reporting that the

Plaintiffs' and other borrowers' mortgage loans were "included in or discharged in bankruptcy,

Ch. 13" despite the fact that their loans were never included in their bankruptcy (let alone

discharged), (2) claims against Ocwen under Section 6 of the Real Estate Settlement Procedures

Act, 12 U.S.C. § 2650 *et seq*. ("RESPA") and for breach of contract for falsely assessing legal

fees for the supposed filing of "proofs of claims" in borrower bankruptcy proceedings ***where***

***such "proofs of claim" were never actually filed at all,*** and (3) violations of RESPA Section 6

and breaches of contract against Defendants Ocwen and Nationstar regarding the loss of one of

the Hall's monthly mortgage payments, resulting in the Halls overpaying Nationstar by a full

month (under protest) so as to avoid wrongful threats of foreclosure/collections.

***Ocwen and Experian Falsely Report Loans as Being "Involved in or Discharged Through Bankruptcy" That Were Never Actually Included in Any Bankruptcy***

2.      The first issue in this case deals with false and inaccurate credit reporting and the

failure of Ocwen and Experian to fix it. In short, although the FCRA was designed to ensure that

consumer reporting agencies (also known as credit bureaus, such as Experian, TransUnion, and

Equifax) and furnishers (companies that report payments to credit bureaus) take precautions to

ensure accuracy in their credit reporting, both Ocwen and Experian have given such obligations

disastrously short shrift. That is, rather than promptly correct errors and reinvestigate disputes,

both Ocwen and Experian provide perfunctory responses that reveal none of them is willing to

take the time required to actually verify the disputed information and remove damaging errors.

3.      In the case of Kellie and Geoffrey ("Spencer") Hall (collectively the "Halls" or

the Plaintiffs), the couple was unable to clear up material errors that negatively impact their

credit scores despite writing letters—to Ocwen and Experian alike—explaining the errors for

over a year. Indeed, despite repeated attempts to have both companies clear up a litany of

material errors on their credit profiles, the Halls have been forced to bring this litigation in order

to get someone to actually pay attention and clean up mistakes that they have outlined numerous

times.

4.      Unfortunately, the Halls are not alone. Hundreds of thousands and even millions

of consumers have errors on their consumer reports and they attempt to get them remedied only

to run up against a wall of obstinate responses. The simple truth is that the Defendants in this

case have shirked their duties under the FCRA with respect to the Halls and potentially hundreds

of thousands (or more) of other individuals who've disputed inaccurate information only to be effectively ignored.

5.      The central negative reporting item at issue in this case involves Defendant Ocwen's continued reporting to Experian (and potentially others) that the Halls's primary mortgage was a "debt included in or discharged through bankruptcy, Ch. 13." This is patently false. The simple truth is that while the Halls declared bankruptcy in September 2011, their primary mortgage was *never* "included in or discharged through bankruptcy."

6.      The Halls brought this error to Ocwen's attention on multiple occasions—and asked specifically that the entry be removed because their loan held by Ocwen had *never* been "included in or discharged through bankruptcy." This was to no avail. That is, Ocwen responded repeatedly that it was reporting the loan properly. The Halls then disputed the entry directly with Experian by sending a dispute letter together with documents showing the loan had never been "included in or discharged through bankruptcy." Experian responded by indicating that it needed to check with Ocwen, the furnisher, to obtain additional information. Shortly thereafter Experian indicated that it had updated the entry. But instead of removing the false item Experian provided an "updated" entry that indicated the account was "Discharged through Bankruptcy Chapter 13"—a statement that remains false and inaccurate.

7.      Ocwen and Experian have refused to take a reasonable amount of time needed to review the Hall's bankruptcy information and remove the false and damaging entry even after it has been explained to both of them multiple times, and even after Experian notified Ocwen of the Hall's dispute. They have certainly failed to institute reasonable procedures designed to ensure accuracy in the information that report.

8.      The false negative reporting has damaged the Halls's credit score and has negatively impacted their ability to obtain credit through other sources. This includes, among other things, being turned down for an automobile loan. Their inability to secure affordable credit has thwarted their ability to get a new truck (their current truck keeps breaking down). Furthermore, the false reporting has caused them severe emotional distress, anxiety, and related harm.

9.      Plaintiffs seek relief on behalf of themselves and all other Ocwen borrowers (*i.e.*, borrowers whose mortgage loans are serviced by Ocwen) who had the entry "included in or discharged in Chapter 13 bankruptcy" despite never having actually including their mortgage loans in their bankruptcy proceedings.

***Ocwen Also Falsely Assesses $275 Legal Fees for Filing Proofs of Claim That Were Never Actually Filed.***

10.      Ocwen also assessed a $275 charge on the Halls account for Legal Fees. When the Halls questioned this charge, they were informed that it was for legal fees in connection with their bankruptcy.

11.      Specifically, Ocwen provided a bill from its supposed bankruptcy lawyers that read, "POC - Filed".

12.      But here's the rub: Ocwen never, whether on its own or through its lawyers, filed any proof of claim in the Halls' personal bankruptcy proceeding. Nor did it ever have any need to—the loan was *never* included in or discharged in the bankruptcy.

13.      Despite disputing this charge with Ocwen through repeated qualified written requests, Ocwen claimed that it was permitted to impose it. Then, in later correspondence, Ocwen suggested that it would notify Nationstar of the charge and that it shouldn't have been

imposed, but that isn't sufficient. On information and belief, Ocwen has charged hundreds or thousands of consumers like Plaintiffs $275 legal fees for supposedly filing proofs of claim in bankruptcy cases that were never actually filed and has then doubled-down by insisting in response to qualified written requests that it was allowed to do so.

***Adding Insult to Injury, Ocwen Lost One of the Hall's Payments***

14.    In addition to all this, in November 2015 Ocwen transferred the servicing of the Halls mortgage loan to Defendant Nationstar, another major mortgage servicer.

15.    In total, Ocwen serviced the Hall's loan for 26 months and received 26 timely monthly payments. Despite this, Ocwen apparently "lost" the Halls's September 2015 payment, or another payment, and reported the loan as being behind to Nationstar. Nationstar, in turn, sent the Halls notices indicating that the account was past due and that the Halls faced foreclosure.

16.    The Halls, through qualified written requests, attempted to inform both Ocwen and Nationstar of their mistake. The Halls even attached proof of all 26 payments made to Ocwen, together with copies of the canceled checks proving that Ocwen received every payment. Notwithstanding this, Ocwen and Nationstar ignored the Hall's explanations and Nationstar demanded full payment. In order to avoid foreclosure, the Halls ultimately submitted an extra month payment to Nationstar "under protest."

17.    Since that time, despite repeated efforts, Ocwen and Nationstar have refused to correct this error. Indeed, in response to one letter, attached to which was yet another copy of all 26 payments made and cleared against the Hall's mortgage loan account during the entirety of Ocwen's servicing, Ocwen responded that it had reviewed the file and had concluded that it serviced the loan for 20 months and "received 20 payments". This is astonishing—Ocwen

plainly serviced the loan for 26 months, not 20, and it had reported to Nationstar that a payment had been missed. As such, how could it possibly have missed an entire half-year of its own servicing of the loan? The answer is simple: Ocwen fails to take the time necessary to investigate requests and ensure that it responds to them adequately.

18.     This error, like Ocwen's other errors, has caused the Halls substantial damages, as well as humiliation, stress, emotional distress, and anxiety.

19.     In sum, Ocwen falsely reported the Halls as having a loan that was included in or discharged through bankruptcy when in reality the loan was never included in or discharged through bankruptcy, falsely assessed $275 legal fees for filing documents that it never actually filed, and lost one of the Hall's monthly payments, requiring them to submit an extra payment. All the while the Defendants have trashed the Halls credit scores and credit ratings, prohibiting them from obtaining sources of credit and driving up the costs of alternative credit.

20.     All actions described herein by Defendants were willful, and at the very least negligent. That is, with respect to the conduct described in this Complaint, Defendants acted with knowledge or conscious disregard of the law, or at least unreasonably in light of the foreseeable risks of their conduct. By failing to take a reasonable amount of time to review the Halls and other persons' disputes Defendants have neglected their duties to Plaintiffs and the Class Members. Had Defendants taken a reasonable amount of time or other reasonable care as required they would have removed the false entry that indicated the loan was included in or discharged through bankruptcy. Instead they pay little attention and, as a result, damaging errors persist.

21.     In light of this, and as set forth throughout this Complaint, Plaintiffs Geoffrey and Kellie Hall (the "Halls") brings this Class Action Complaint against Defendants Ocwen, Nationstar, and Experian ("Defendants") to stop their serial unfair practices of: (1) falsely reporting loans as having been included in bankruptcy as having been "included in or discharged through bankruptcy," (2) charging $275 legal fees for proofs of claim that were never filed, and (3) of losing payments and threatening borrowers with foreclosure. Plaintiffs seek the relief set forth herein with respect to themselves and all others similarly situated.

22.     Plaintiffs, for their Class Action Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## II.     PARTIES

23.     Plaintiff Kellie Hall ("Kellie") is an individual domiciled and residing in the State of Colorado.

24.     Plaintiff Geoffrey Spencer Hall ("Spencer") is an individual domiciled and residing in the State of Colorado. Together with his wife Kellie, they are referred to collectively throughout this Complaint as "Plaintiffs" or the "Halls."

25.     Defendant Ocwen Financial Corporation is a corporation organized under the laws of Florida, with its principal place of business in Atlanta, Georgia.

26.     Defendant Ocwen Loan Servicing, LLC is Delaware limited liability company, and an indirect wholly-owned subsidiary of Ocwen Financial Corporation. Ocwen Loan Servicing, LLC maintains operations in this District related to the activities at issue in this case. Ocwen Loan Servicing, LLC's headquarters are located in West Palm Beach, Florida. It is

licensed to service mortgage loans in all fifty states, including California, the District of

Columbia, and two U.S. territories.

27.     Defendant Nationstar Mortgage LLC ("Nationstar") is a Delaware limited liability

company with its principal place of business at 350 Highland Drive, Lewisville, Texas 75067.

Nationstar does business and services loans secured by real property located throughout the

United States, including in the State of Colorado and in this District.

28.     Defendant Experian Information Solutions, Inc. is a corporation incorporated and

existing under the laws of the State of Ohio. Its principal office address/principal place of

business is 475 Anton Blvd. Costa Mesa, CA 92626. Experian does business throughout the

United States, including in the State of Colorado and in this District.

### III.     JURISDICTION & VENUE

29.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1331, as the action arises under the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.*

("FCRA") a federal statute. The action also arises under the Real Estate Settlement Procedures

Act, 12 U.S.C. § 2605 *et seq.*, ("RESPA") which is also a federal statute. Jurisdiction is further

appropriate under the Class Action Fairness Act, 28 U.S.C. 1332(d) et seq. in that the proposed

Classes consist of over 100 people, the Class is minimally diverse, more than $5 million is at

issue, and none of the exceptions to CAFA jurisdiction applies. Finally, the Court has

jurisdiction over the subject matter of all pendent and ancillary state law claims under 28 USC §

1367 *et seq*.

30.     The Court has personal jurisdiction over Defendants and venue is proper in this

District because Defendants regularly conduct business in this District, and a substantial part of

the events giving rise to the claims asserted here occurred in this District. Defendants Ocwen and Nationstar regularly service mortgages for borrowers located in this District, and Defendant Experian routinely provides consumer reports regarding consumers located in this District or to persons located in this District.

31.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants conduct significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. The reporting errors at the heart of this Complaint were directed, in part, to this District and the failure to correct them occurred in part in this District. Venue is additionally proper because Plaintiff resides in this District.

### IV.     COMMON ALLEGATIONS OF FACT

32.     Ocwen is one of the nation's largest third-party mortgage servicers. Mortgage servicers like Ocwen purchase the servicing rights to mortgage loans and then service those loans—sending out bills, collecting payments, allocating them properly, and engaging in loss mitigation—on behalf of whoever actually owns the loan(s).

33.     Complaints about Ocwen's mishandling of its mortgage servicing obligations are legion. The company has been accused of routinely misapplying or losing payments, failing to respond to or correct borrower issues, falsifying documents, and fraudulently foreclosing on homeowners.

34.     This case addresses three key failures by Ocwen.

35.     First, Ocwen reports borrowers who have filed for bankruptcy but who have <u>not</u> included their mortgage loan in their bankruptcy proceedings as "debt included in or discharged

through bankruptcy Ch. 13" and the like. This is <u>not</u> accurate. The Halls mortgage with Ocwen

was not included in or discharged through bankruptcy because these loans were never listed by

the Halls or any other borrowers on their bankruptcy schedules. Rather, Ocwen simply pretends

as if by filing for bankruptcy that automatically means the debt itself is "included in" bankruptcy.

This is false and damaging, and leads potential creditors to incorrectly believe that the Halls

wouldn't or haven't paid their primary mortgage when in reality they have never missed a

payment. Ocwen defends such reporting as if the "loan" or "debt" is in bankruptcy, but it isn't.

The borrowers, not the loan or the debt, were in bankruptcy and the reporting was false and

likely to mislead creditors about whether the Halls and others paid their first mortgages. Further,

even to the extent such reporting is technically accurate (it's not), it still is misleading as the

borrowers never included the loan in the bankruptcy proceeding. Ocwen, together with Experian,

fails to correct such errors when customers like the Halls request that they reinvestigate and do

so. These facts give rise to claims under the FCRA for failures to adequately reinvestigate and

correct report after a dispute has been made with the consumer reporting agency, and for failure

to adopt reasonable procedures designed to ensure accuracy.

     36.     Second, Ocwen fraudulently imposes $275 "Legal Fees" for supposedly filing

proofs of claim in bankruptcy proceedings that are never actually filed. RESPA Section 6, and its

implementing regulation, Regulation X, make clear that servicers cannot impose "a fee or charge

that the <u>servicer</u> lacks a reasonable basis to impose upon the borrower." Here, Ocwen disregards

this rule by charging $275 (and perhaps other, similar amounts) for its lawyers having

supposedly filed "proofs of claim" in bankruptcy that were never filed. It's just a lie—a way for

Ocwen to steal an extra $275 whenever a borrower files bankruptcy, irrespective of whether the

loan at issue was actually listed on the borrower's bankruptcy schedule(s) or otherwise included in the bankruptcy. These facts give rise to claims under RESPA Section 6 and for breach of contract, including without limitation the implied covenant of good faith and fair dealing.

37.     Finally, Ocwen lost the Halls' September 2015 payment. That is, it deposited the check but never credited the Halls' account. As a result, when Ocwen transferred the servicing rights for the Halls' loan to co-Defendant Nationstar in November of 2015 Ocwen falsely reported to Nationstar that the Halls were behind by one month. Nationstar, in turn, threatened the Halls with foreclosure. Ultimately the Halls, who are of very limited financial means, submitted an entire extra full month mortgage payment, "under protest," to Nationstar together with an explanation of the circumstances, a copy of all 26 payments made to Ocwen for the 26 months that Ocwen held the servicing rights to their mortgage loan, and a request that Nationstar investigate the facts and issue an appropriate refund. To date both Ocwen and Nationstar have wholly failed to address this issue. These facts give rise to claims under RESPA Section 6 and for breach of contract, including without limitation the implied covenant of good faith and fair dealing.

38.     Ocwen, Experian, and Nationstar's conduct has proved tremendously damaging to the Plaintiffs and the other class members. They have seen their credit scores and profiles trashed and tarnished and their ability to repair the damage repeatedly thwarted and stifled. They've been assessed fraudulent fees and threatened with foreclosure.

### V.     FACTS SPECIFIC TO PLAINTIFFS KELLIE AND SPENCER HALL

***The Halls Obtain a Mortgage Loan on their Primary Residence, the Servicing of Which is Transferred to First to Ocwen and Then to Nationstar***

39.     This case is born from a mortgage loan 7195xxxxxx (the "Subject Loan") that the

Halls obtained on their primary residence located on Hoyt Street in Lakewood, Colorado.

40.     For a period of time prior to 2013, GMAC Mortgage, LLC ("GMACM") owned or held the Subject Loan. GMACM's parent company, Residential Capital, LLC, together with over 40 of its subsidiaries thereafter went bankrupt in 2012.

41.     Effective February 16, 2013, a portion of the servicing platform and certain assets were sold to Ocwen, including the servicing rights (and supposedly the records, too) for the Hall's account/the Subject Loan.

42.     Ocwen serviced the loan for 26 months until the Subject Loan was transferred to Nationstar on November 1, 2015. During that time, the Halls paid to Ocwen, and Ocwen received and cashed, 26 monthly payments.

43.     On September 23, 2011, the Halls filed for protection under Chapter 13 of the United States Bankruptcy code. The Halls never listed or otherwise included the Subject Loan in their bankruptcy proceeding and at all times continued to make timely mortgage payments.

44.     The Halls bankruptcy proceeding was discharged November 2, 2015, the day after the servicing of the Subject Loan was transferred from Ocwen to Nationstar.

***Ocwen's Inaccurate Credit Reporting and Loss of One of the Hall's Monthly Payments***

45.     In or around 2015 the Halls discovered that Ocwen was reporting to the credit bureaus, including to Defendant Experian, that the Subject Loan's status was "Debt included in or discharged through bankruptcy Ch. 13" or substantially similar language.

46.     The Halls disputed such reporting to Ocwen's research department.

47.     On December 21, 2015, Ocwen responded to the Halls in a letter. Among other things, Ocwen asserted that all reporting would remain suppressed during the bankruptcy and

that, according to its research, the bankruptcy was still active as of November 1, 2015. This is bizarre—Ocwen should have looked and seen that as of the very next day, November 2, 2015, the bankruptcy had been discharged, and thus reporting was no longer suppressed. It is unclear why Ocwen ignored the period from November 2, 2015 to December 21, 2015 when reporting was clearly open and false.

48.     One explanation comes from later on in Ocwen's December 21, 2015 response wherein it asserted that, "A review of our records indicates that the credit reporting submitted to the credit bureaus for the aforementioned loan correctly reflected that accurate status." This is of course also incorrect. The "debt," which in this case is the Subject Loan, was never "included in or discharged through bankruptcy." Even if it could be claimed that the borrowers were in bankruptcy, the loan was not, and Ocwen's reporting to Experian gave the false impression to potential and actual creditors that the Halls were so derelict that they refused to pay their own home mortgage, which is of course false—the Halls timely submitted payment that came due on the Subject Loan.

49.     Furthermore, following the transfer of the servicing rights to Nationstar, in or around December 2015 Nationstar informed the Halls by letter that Plaintiffs' mortgage payment was currently "past due." This was a shock given that the Halls had submitted all payments to Ocwen and to Nationstar on time. The only payment that was recorded late was in October 2015 when Ocwen changed the mailing address for payments, forcing the Halls to resubmit the payment to Ocwen, which Ocwen accepted.

50.     On December 23, 2015, the Halls called Nationstar and were told by a representative that Ocwen had reported to Nationstar that the Halls had never made their

payment for September 2015. On December 28, 2015, the Halls spoke with Jennifer in Ocwen's research department who instructed the Halls to fax proof of the September payment, which the Halls promptly did. It solved nothing.

***Ocwen and Nationstar Refuse to Correct Ocwen's Error and Ocwen Assesses and Extra $275 in Legal Fees***

51.     Ocwen refused to correct either the credit reporting error or to properly credit the Hall's account. As such, in March 2016 the Halls caused a Qualified Written Request ("QWR") to be submitted under RESPA Section 6 asking Ocwen to correct the negative credit reporting and missing payment errors. The Halls also asked that Ocwen explain and remove a mysterious $275 charge for legal fees.

52.     On December 29, 2015 Nationstar informed the Halls that Ocwen had apparently applied their September 2015 payment to the payment for July 2015 for some unknown reason, and their October 2015 payment to August 2015. The Halls tried to explain Ocwen's error but Nationstar refused to listen. On March 3, 2016, the Halls sent a letter to Nationstar and attached canceled checks showing that Ocwen received 26 total payments. To stave off foreclosure proceedings the Halls also sent Nationstar, on a check marked "under protest", an extra payment of $1,879.69—the amount that Nationstar claimed was due (due to Ocwen's servicing errors). To date, and despite repeated requests, Nationstar has never returned this payment to the Halls even though it has no right to the money. The Halls are of limited financial means and coming up with this extra payment added tremendous stress to their already stressful situation.

53.     For its part, Ocwen responded on April 6, 2016, with a response that is charitably described as nonresponsive. Ocwen's letter stated:

A review of the loan indicates that borrower(s) Kellie A. Hall and Geoffrey S. Hall)

filed for protection under Bankruptcy Chapter 13 on September 23, 2011, which was still active on the loan as of November 1, 2015. Please note that the reporting on the loan will remain suppressed until the bankruptcy plan is completed and the bankruptcy is closed. Our review of our records indicates that the credit reporting submitted to the credit bureaus for the aforementioned loan correctly reflecting reporting as 'suppressed.'

54.     It is difficult to see how this is true. First, nowhere did Plaintiff's credit reports reflect a "suppressed" reporting status for Ocwen. Rather, Ocwen continued to (falsely, or at least misleadingly) report Plaintiffs as "Debt included in or discharged through bankruptcy Chapter 13." Further, this letter was sent in April 6, 2016—nearly 6 months after the bankruptcy had already been discharged. As such, the statement "Please note that the reporting on the loan will remain suppressed until the bankruptcy plan is completed and the bankruptcy is closed" is meaningless. It fails to explain the past half-year of reporting or correct for such errors/misleading information. Had Ocwen performed a reasonable inquiry it would have noticed that the bankruptcy was already complete and therefore any reporting would need to be updated. Instead, it is doubtful that Ocwen performed any check to update its file with respect to the status of the bankruptcy proceeding(s) as part of its failure to perform a reasonable investigation.

55.     Ocwen also stated in its April 6, 2016 response to the QWR that "Please be advised that the serving was relocated from one Ocwen servicing location to another as of March 4, 2014, with outstanding fees of $275. Please be advised that the Legal Filing Service fees in the amount of $275.00 were assessed on September 3, 2013." Ocwen did not offer to refund the fee or indicate in any way that it was improper. Ocwen also indicated that it had reviewed its records and that "all the payments for the details provided in the correspondence have been received and applied on the loan accordingly." At no time have the Plaintiffs received a full refund.

56.     The Halls Experian credit report for Ocwen pulled April 27, 2016 continued to

indicate that the payment status was "Debt included in or discharged through bankruptcy chapter 13." It also said falsely that they "failed to pay" in November 2015—a remarkable entry given that November 2015 was the month the loan was transferred by Ocwen to Nationstar and Ocwen had told the Halls to send the November payment to Nationstar.

57.     The Halls sent another QWR to Ocwen on May 23, 2016 explaining: (1) that the credit reporting remained improper since the loan was never in bankruptcy, (2) that there was no basis for assessing the $275 charge, and (3) that Ocwen had indeed failed to credit all of the payments properly insofar as the Halls never missed any "November 2015" payment as Ocwen had reported to Experian. Indeed, the Halls once again attached proof of all 26 payments that have been sent to Ocwen for all 26 months Ocwen serviced the loan.

58.     Ocwen responded on June 24, 2016. With respect to the credit reporting, Ocwen stated that:

> Once Bankruptcy Chapter 13 is filed, the Credit Reporting Agencies suppresses [sic] all the reporting and there in [sic] credit reporting or account history updated until bankruptcy is discharged. Upon discharge of bankruptcy, the loan will be reported as per the contractual status. Accordingly, the credit reporting on the loan made by us was suppressed from the bankruptcy filed date until the discharged date and the loan was reported with a special comment saying "Petition for Chapter 13 Bankruptcy" as per the credit reporting guidelines. We are obligated to report true and accurate information to the credit bureaus....

59.     This is problematic for several reasons, including but not limited to the fact that the Experian reporting for the Subject Loan didn't say, "Petition for Chapter 13 Bankruptcy"; rather, it stated that the "Debt included in or discharged through bankruptcy, Chapter 13", which is untrue. It is unclear whether this statement is unique to Experian or it is how Ocwen reported the loan to Experian and other consumer reporting agencies. Discovery is needed on this issue.

60.     Also "Petition for Chapter 13 Bankruptcy" is misleading insofar as it implies the

loan was included in or discharged through the bankruptcy.

61.     Further, no credit reporting guidelines require the reporting that a debt has been included in or discharged through bankruptcy when it hasn't been. This is a false statement of the law designed to lead reasonable consumers like the Halls to falsely believe that Ocwen, a sophisticated corporation, is legally in the right while the Halls, who are without means to challenge Ocwen's legal analysis, are somehow in the wrong. Ocwen's statement appears designed and intended to lull the Halls and other aggrieved consumers into not making further inquiry.

62.     With respect to the proper receipt and crediting of all payments, Ocwen incredibly responded that:

> Upon review, it was determined that post the acquisition of the above loan Ocwen had received a total of 20 payments from the borrower, which were accurately applied toward the loan. Therefore, the due date reflecting on the loan at the time of service transfer was October 1, 2015, which is valid.

This was frankly stunning. Ocwen had supposedly done a review, for the third or fourth (or more) time, and now it was saying that it had collected 20 monthly payments—not the 26 that had actually been submitted and cashed—but only 20 months. Yet Ocwen wasn't seeking a judgment for the supposedly 6 missing months, nor had it reported the Halls as being behind by 6 months (because such payments weren't actually missing at all—Ocwen's records, and its investigation, were wrong/inadequate).

63.     Rather, it appears that Ocwen's "investigation" and review in response to QWRs and related disputes is just a sham, perfunctory process where insufficient time is devoted to actually fixing obvious errors. The issue for over a year had been whether Ocwen had received 25 payments out of 26 months or the full 26 months of payments. Now, over a year into the

dispute and review process, Ocwen's official position was that it had properly credited all "20" of the Hall's payments. To the Halls, this was maddening.

64.      As for the $275 fee, Ocwen finally admitted that it wasn't allowed to charge such fees yet refused to fund a nickel. Instead, Ocwen indicated that "[W]e have submitted a request to Nationstar Mortgage LLC, to remove/waive the above Legal Filing Service fees from the loan. In the interim, you may use this letter as evidence that the request has been submitted." That is insufficient. Ocwen retained the benefits of the money which has never actually been returned to the Halls. Further, for months Ocwen pretended as if they were permitted to assess the fee and the Halls needed the help of counsel to get Ocwen to do something as trivial as claim that it sent an update to Nationstar.

***The Halls Continue to Dispute Ocwen's Conclusions***

65.      The Halls continued to send letters to Ocwen proving that all 26 payments were submitted and received and that Ocwen was simply mistaken. Ocwen simply refused to budge. On November 16, 2016, Ocwen responded to the last QWR stating that "[U]pon issuance of a discharge order by the Bankruptcy court, credit reporting would be made on the loan in accordance with the updated contractual status of the loan." But Ocwen plainly failed to do this. The Bankruptcy Court issued its discharge Order a year earlier, in November of 2015, yet Ocwen had continued to falsely report the Halls throughout that year (and up to the present) to Experian as "debt included in or discharged through bankruptcy", which is simply false.

66.      Also in the November 16, 2016 letter response from Ocwen, and with respect to the missing payment specifically, Ocwen denied any culpability, stating that "We have applied all the payments received on the loan in accordance with all applicable federal and state laws and

as outlined in the original Note and any agreed upon amendments thereto." The obstinacy is overwhelming.

***Left With No Other Choice, The Halls Dispute the Reporting with Experian; Experian and Ocwen Jointly Fail to Correct the Errors***

67.     In January 2017, the Halls sent letters to Experian explaining that they never "failed to pay" the Subject Loan in any month (so such indications to the contrary were false) and that the Subject Loan had never been "included in or discharged through" their Chapter 13 bankruptcy.

68.     Experian responded that it would contact Ocwen regarding the dispute.

69.     Following this supposed contact, Experian purported to "fix" the inaccurate reporting but it failed to do so.

70.     Rather, Experian still reports the Halls as "failed to pay," now it's only noted in September 2011 instead of November 2015 as it showed before the supposed "fixes." Furthermore, Experian still falsely reports that the "Debt included in or discharged through bankruptcy, Chapter 13." As indicated repeatedly throughout this complaint, that is false and misleading as the debt was never "included in or discharged through bankruptcy."

71.     As an actual and proximate cause of Ocwen's, Nationstar's, and Experian's conduct Plaintiffs have suffered actual damages including harm to credit and damage to their credit profiles and scores. This has led to increased cost of credit and credit being outright denied improperly. Ocwen and Nationstar have also failed to credit back the $275 plus interest from the falsely assessed Legal Filing Service fees. Ocwen and Nationstar have also failed to refund the extra payment charged and received by the Halls. The Halls have further experienced humiliation and severe stress and anxiety as a result of the Defendants' joint obstinate and willful conduct.

# VI.   CLASS ACTION ALLEGATIONS

72.   In accordance with F. R. Civ. P. 23(b)(1), (b)(2) and (b)(3), Plaintiffs bring this

class action for claims under the FCRA on behalf of the following two ascertainable Classes of

persons:

> **Debt Included in Bankruptcy Class (the "DIB Class"):** All persons in the United
> States who, from a date two years prior to the filing of the initial Complaint in this
> case through the date notice is sent to the DIB Class, had a mortgage loan that was
> reported by Ocwen and Experian as "Debt included in or discharged through
> bankruptcy, Ch. 13" or effectively similar language where the subject loan was not
> listed in the bankruptcy and the mortgage debt was never discharged.

> **Legal Filing Service Fee Class:** All persons in the United States who, from a date
> three years prior to filing the initial Complaint in this case through the date notice
> is sent to the Legal Filing Service Fee Class, were assessed a $275 Legal Filing
> Service Fee for the supposed filing of a proof of claim by Ocwen where no actual
> proof of claim was ever filed on Ocwen's behalf in the bankruptcy proceeding.

73.   Membership in the Classes is entirely objective and can be verified by reviewing

Defendants' business records, bankruptcy court filings, and other data and documents. That said,

the following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding

over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents,

successors, predecessors, and any entity in which Defendants or their parents have a controlling

interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4)

persons who properly execute and file a timely request for exclusion from the Class; (5) the legal

representatives, successors or assigns of any such excluded persons; and (6) persons whose

claims against Defendants have been fully and finally adjudicated and/or released. Plaintiffs

anticipate the need to amend the class definition following appropriate class discovery.

74.   <u>Class Size (F. R. Civ. P. 23(a)(1))</u>: Plaintiffs are informed and believe, and upon

such information and belief aver, that the number of persons and entities of the Plaintiff Classes

is numerous and joinder of all members is impracticable. Plaintiffs are informed and believe, and upon such information and belief aver, that the number of class members are in the thousands for each Class.

75.   <u>Commonality (F. R. Civ. P. 23 (a)(2))</u>: Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

a.   Whether the Defendants violated the FCRA by continuing to report consumer loans as "Debt included in or discharged through bankruptcy, chapter 13" where the loan was never included in or discharged through bankruptcy;

b.   Whether the phrase "Debt included in or discharged through bankruptcy, chapter 13" is misleading to creditors where the loan was never included in or discharged through bankruptcy (only the borrower had personally filed without including the loan);

c.   Whether Defendants violated RESPA Section 6 and breached the loan documents by imposing a $275 Legal Filing Service Fee for filing a Proof of Claim in bankruptcy that was never actually filed;

d.   Whether the Defendants acted willfully and/or negligently; and

e.   Whether Plaintiffs are entitled to actual and statutory damages.

76.   <u>Typicality (F. R. Civ. P. 23 (a)(3))</u>: The Plaintiffs' claims are typical of the claims of all class members. Plaintiffs were reported to Experian as having a "debt included in or discharged through bankruptcy, chapter 13" just as the other class members were. Likewise, Plaintiffs were charged the $275 Legal Filing Service Fee despite the fact no proof of claim was ever filed by Ocwen in their bankruptcy proceeding. Plaintiffs make the same claims and seek

the same relief for themselves and all class members based upon the same theories and laws. The Defendants have acted the same or in a similar manner with respect to the Plaintiffs and all the class members.

77.     Fair and Adequate Representation (F. R. Civ. P. 23 (a)(4)): Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs are interested in this matter, have no conflicts, and have retained experienced class counsel to represent the Classes.

78.     Common Conduct (F. R. Civ. P. 23 (b)(2)): Class certification is appropriate because the Defendants have acted and refused to act in the same or similar manner with respect to all class members thereby making injunctive and declaratory relief appropriate on claims where such relief is available.

79.     Predominance, Superiority, and Manageability (F. R. Civ. P. 23 (b)(3)): Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy. Proving the claims of the Plaintiffs will also prove the claims of the Classes without the need for separate or individualized proceedings; evidence regarding defenses or any exceptions to liability that the Defendants may assert and prove will come from the Defendants' records and will not require individualized or separate inquiries or proceedings; the Defendant has acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members; the amount likely to be recovered by individual class members does not support individual litigation. Further, a class action will permit a large number of relatively smaller claims involving virtually identical facts and legal issues to be resolved efficiently in a single proceeding based upon common proofs.

80.     This case is manageable as a class action in that: the Defendants can identify persons or entities who were reported as "debt included in or discharged through bankruptcy chapter 13" where the debt wasn't listed in the bankruptcy schedule as well as its borrowers against whose accounts it charged a $275 Legal Filing Service Fee where no proof of claim was actually ever filed. Furthermore, liability and damages can be established for the Plaintiff and the Classes with the same common proofs; statutory damages are provided for in the FCRA and RESPA and are the same for all class members and can be calculated in the same or a similar manner; a class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense; a class action will contribute to uniformity of decisions concerning the Defendant's practices; and as a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

## VII.   CAUSES OF ACTION

### COUNT I: Violation of the Fair Credit Reporting Act
### 15 U.S.C. § 1681, *et seq*.
### On behalf of Plaintiffs and the DIB Class Against Ocwen and Experian

81.     Plaintiffs reallege the foregoing allegations as if they were set forth fully herein.

82.     Experian, as a consumer reporting agency, violated the FCRA by failing to conduct an adequate reinvestigation in response to the Halls' dispute letters and by failing to adopt reasonable procedures designed to ensure maximum possible accuracy in its consumer reports. In other words, Experian violated the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b), by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished regarding the Plaintiff. Experian could have plainly reviewed the paperwork submitted by the Halls and determined that the Subject Loan was

never included in or discharged through the bankruptcy such that continuing to report the Subject

Loan as a "Debt included in or discharged through bankruptcy, chapter 13" is false, inaccurate,

and misleading. Furthermore, Experian should ensure that the debt is actually included in the

bankruptcy before upholding a note that claims the debt is included or has been discharged

through the Chapter 13 proceeding.

83.     On information and belief Experian also failed to contact Ocwen and/or provided

sufficient information to Ocwen for Ocwen to address the dispute.

84.     Ocwen, as a furnisher, also violated the FCRA by continuing to report the loan as

a "Debt included in or discharged through bankruptcy, chapter 13," when in reality the Subject

Loan was <u>never</u> included in or discharged through any bankruptcy. Ocwen failed to perform a

reasonable reinvestigation following the receipt of a notice from Experian regarding the Hall's

dispute. Instead of taking the time to reinvestigate once it received notice from Experian, Ocwen

failed to spend a reasonable amount of time addressing a dispute that plainly required more than

a cursory review (which, on information and belief, Ocwen provides as a matter of routine

practice and policy). Had Ocwen spent sufficient time reinvestigating the dispute it wouldn't

have reported the Halls as failed to pay or reported their debt, falsely and inaccurately, as having

been "included in or discharged through their bankruptcy." Ocwen failed to perform an adequate

or reasonable initial investigation or re-investigation.

85.     The Halls paid their primary mortgage securing the Subject Loan in full and on

time each month.

86.     The Halls took pride in not missing a payment on their home loan.

87.     Ocwen and Experian's decision to report the Hall's as having a loan that was "included in or discharged through bankruptcy chapter 13," has caused substantial damage to the Hall's credit rating, credit profile, and their physical and mental health and wellbeing. It has increased the cost of credit to them and has caused them to suffer extreme levels of stress and anxiety.

88.     Creditors reviewing Ocwen and Experian's reporting would have seen the notation of "debt included in or discharged through bankruptcy chapter 13," and would have been given the false impression that the Halls and other members of the DIB Class had failed to pay their home loans when, in reality, the Halls and the other class members had been making their payments.

89.     Ocwen has improperly reported hundreds or even thousands of other borrowers in this exact same manner giving rise to a pattern or practice of abuse.

90.     All of the Defendants' conduct set forth in this Count was committed willfully or, at the very least, negligently. Had Defendants established reasonable procedures or performed reasonable reinvestigations they would have removed such false and misleading reporting. Defendants failed to do so and are thus liable for such conduct to Plaintiffs and the other DIB Class Members.

91.     Defendants' conduct described herein has actually and proximately caused the Halls and the other Class members actual monetary damages including without limitation lost monies and time, damage to their credit and increased cost of credit, including high interest credit cards in lieu of more affordable credit which has been denied, and stress, anxiety, and humiliation.

92.     Plaintiffs seek actual and statutory damages in amounts to be proven at trial, plus

punitive damages for any willful misconduct, plus costs and reasonable attorneys' fees.

**COUNT II: Violation of the Real Estate Settlement Procedures Act**
**12 U.S.C. § 2605, *et seq*.**
**On behalf of Plaintiffs and the Legal Filing Service Fee Class Against Ocwen**

93.     Plaintiffs reallege the foregoing allegations as if they were set forth fully herein.

94.     Ocwen imposed a $275 Legal Filing Service Fee Charge, ostensibly for filing a

proof of claim in the Hall's bankruptcy proceeding.

95.     RESPA Section 6 prohibits the "Imposition of a fee or charge that

the servicer lacks a reasonable basis to impose upon the borrower." 12 CFR § 1024.35(b)(5).

96.     Ocwen never filed a proof of claim in the Halls bankruptcy proceeding. As such,

the imposition of a fee for filing such a proof of claim was flatly improper.

97.     When the Halls disputed the charge in a QWR Ocwen doubled-down and insisted

it was permitted to impose such a fee.

98.     Ocwen has imposed similar false charges on thousands of similarly situated

borrowers causing such borrowers not only $275 but the stress and anxiety that comes with being

charged false sums by an entity that can foreclose on your home if you don't pay amounts that

the servicer unreasonably demands. Defendants' conduct described herein has actually and

proximately caused the Halls and the other Class members actual monetary damages including

without limitation lost monies and time, and stress, anxiety, and humiliation.

99.     Plaintiffs seek actual and statutory damages in amounts to be proven at trial, plus

punitive damages for any willful misconduct, plus costs and reasonable attorneys' fees.

**COUNT III: Breach of Contract**
**On behalf of Plaintiffs and the Legal Filing Service Fee Class against Ocwen**

100.     Plaintiffs reallege the foregoing allegations as if they were set forth fully herein.

101.     The Halls and other mortgage borrowers had loan agreements that form binding contracts. By acquiring the loans and servicing rights, Ocwen was the lender under such contracts.

102.     These contracts contain express price terms as well as implied terms, including the implied covenant of good faith and fair dealing.

103.     Ocwen breached the express price and fee provisions by imposing an unauthorized $275 Legal Service Filing Service Fee. It had no basis to charge such amounts and, by doing so, Ocwen breached the price terms of the loan documents.

104.     To the extent an express contractual provision wasn't breached then Ocwen breached the implied covenant of good faith and fair dealing. In this alternative respect Ocwen has discretion under its loan documents to determine when and how it is going to impose certain fees and charges. Ocwen abused this discretion by imposing a fee on the Halls and its other borrowers without a reasonable basis for doing so. Further, concurrent with the duty of good faith and fair dealing is an implied duty of accurate billing.

105.     Defendants' conduct described herein has caused the Halls and the other Class members actual monetary damages including without limitation lost monies and time, damage to their credit and increased cost of credit, including high interest credit cards in lieu of more affordable credit which has been denied, and stress, anxiety, and humiliation from being threatened with being reported as late/being referred to foreclosure if an extra payment wasn't made.

106.   Plaintiffs seek actual damages in amounts to be proven at trial plus all other sums allowed by law.

### COUNT IV:  Unjust Enrichment
### (In the Alternative to Count III)
### On behalf of Plaintiffs and the Legal Filing Service Fee Class against Ocwen

107.   Plaintiffs reallege the foregoing allegations as if they were set forth fully herein.

108.   To the extent there was no contract, equity demands that Ocwen not be permitted to retain the $275 Legal Filing Service Fees for filing supposed "proofs of claims" that it has imposed on borrowers who declared bankruptcy but on whose accounts it never actually filed any proof of claim. Put simply, Ocwen shouldn't be allowed to keep legal fees for filing charges for documents that were never actually filed.

109.   Defendants' conduct described herein has caused the Halls and the other Class members actual monetary damages including without limitation lost monies and time, damage to their credit and increased cost of credit, including high interest credit cards in lieu of more affordable credit which has been denied, and stress, anxiety, and humiliation from being threatened with being reported as late/being referred to foreclosure if an extra payment wasn't made. To date the Halls have not received a full refund.

110.   Ocwen should be disgorged of such monies, which should be returned to the Class to avoid manifest injustice.

### COUNT V: Violation of the Real Estate Settlement Procedures Act
### 12 U.S.C. § 2605 *et seq*.
### On behalf of Plaintiffs Against Ocwen and Nationstar

111.   Plaintiffs reallege the foregoing allegations as if they were set forth fully herein.

112.    It is also unlawful under RESPA section 6 for a servicer like Ocwen to fail "to credit a payment to a borrower's mortgage loan account as of the date of receipt."

113.    Ocwen plainly lost or failed to credit one of the Hall's monthly payments, despite the fact that Ocwen serviced the loan for 26 months and received (and cashed) 26 full and timely payments.

114.    Despite being apprised of this fact repeatedly in qualified written requests, both Ocwen and Nationstar refused to fix this error. Instead, Nationstar threatened the Halls with foreclosure, forcing them to submit an extra month's payment "under protest."

115.    To date this payment has not been returned to the Halls.

116.    Defendants' conduct described herein has actually and proximately caused the Halls actual monetary damages including without limitation lost monies and time, damage to their credit and increased cost of credit, including high interest credit cards in lieu of more affordable credit which has been denied, and stress, anxiety, and humiliation from being threatened with being reported as late/being referred to foreclosure if an extra payment wasn't made.

117.    Any payments made by the Halls were submitted "under protest."

118.    Plaintiffs seek actual and statutory damages in amounts to be proven at trial, plus punitive damages for any willful misconduct, plus costs and reasonable attorneys' fees.

### COUNT VI:  Breach of Contract - Failure to Properly Record Payment
### On behalf of Plaintiffs Against Ocwen and Nationstar

119.    Plaintiffs reallege the foregoing allegations as if they were set forth fully herein.

120.    The Halls had a loan agreement that formed binding contracts.

121.    These contracts contain express price terms as well as implied terms, including the implied covenant of good faith and fair dealing.

122.    Ocwen breached these provisions by failing to credit one of the Hall's monthly payments, despite receiving all monthly payments.

123.    To the extent an express contractual provision wasn't breached then Ocwen breached the implied covenant of good faith and fair dealing. In this alternative respect Ocwen has discretion under its loan documents to determine when, within the 24-hour period of receipt of a payment, when it is going to credit it. Ocwen abused such discretion by failing to credit payments at all.

124.    Implied in the contract is also an implied duty of accurate billing. Ocwen plainly violated this by losing a month's payment and demanding additional sums.

125.    Defendants' conduct described herein has actually and proximately caused the Halls actual monetary damages including without limitation lost monies and time, damage to their credit and increased cost of credit, including high interest credit cards in lieu of more affordable credit which has been denied, and stress, anxiety, and humiliation from being threatened with being reported as late/being referred to foreclosure if an extra payment wasn't made.

126.    Plaintiffs seek actual damages in amounts to be proven at trial plus all other sums allowed by law.

### COUNT VII:  Unjust Enrichment - Failure to Properly Record Payment
### (In the Alternative to Count VI)
### On behalf of Plaintiffs Against Ocwen and Nationstar

127.    Plaintiffs reallege the foregoing allegations as if they were set forth fully herein.

128.     Ocwen and/or Nationstar lost one of Plaintiffs' payments despite the fact that all payments were made and accepted. That is, Ocwen serviced the Subject Loan for 26 months and Plaintiffs submitted, and Ocwen received and accepted, 26 payments. Notwithstanding such payments, Nationstar claimed that Ocwen reported to it that it, Ocwen, only received 25 payments, not 26, or that Ocwen had otherwise indicated a payment had not been made or received.

129.     Plaintiffs disputed this by showing Ocwen and Nationstar proof of all 26 payments repeatedly.

130.     Ocwen and Nationstar refused to listen and instead insisted that they were in the right. Nationstar threatened to report Plaintiffs as late and to refer Plaintiffs foreclosure if they did not pay.

131.     To avoid such proceedings the Halls, who are of modest financial means, paid an entire month's extra to Nationstar.

132.     Such conduct caused the Halls and the other Class members actual monetary damages including without limitation lost monies and time, damage to their credit and increased cost of credit, including high interest credit cards in lieu of more affordable credit which has been denied, and stress, anxiety, and humiliation.

133.     Nationstar and/or Ocwen presently retain such additional funds under circumstances that indicate it would be unjust to allow their continued retention.

134.     Equity and fairness demand that Defendants should be disgorged of such funds and that restitution should be made to Plaintiffs plus such other amounts to be proven at trial.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Kellie A. Hall and Geoffrey S. Hall, on behalf of themselves and the two Classes alleged herein, pray for the following relief:

A.      An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiffs as the representatives of the Classes and appointing their attorneys as Class Counsel;

B.      An award of all actual monetary damages to be proven at trial to be placed into common funds for the benefit of the members of the certified classes;

C.      An award of all statutory damages allowed by law to be proven at trial to be placed into the common funds established for the benefit of the members of the certified classes;

D.      An award of appropriate injunctive and corresponding declaratory relief to the extent allowed by law;

E.      An award of pre-judgment interest;

F.      An award of reasonable attorneys' fees and costs to be paid out of the common fund or as otherwise allowed by statute;

G.      A payment to a suitable cy pres designee(s) of all monies not claimed, and

H.      Such further and other relief the Court deems reasonable and just.

## IX.      JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: August 9, 2017                    KELLIE A. HALL and GEOFFREY S. HALL
                                         individually, and on behalf of all others
                                         similarly situated,

                                         By:   /s/ Steven L. Woodrow

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiffs and the Alleged Classes*